UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL MICHAEL JOHNSON,

                Plaintiff,

-against-

POLICE OFFICER JOSEPH TUDISCO, POLICE
OFFICER MATTHEW DICEMBRI, SGT.
ANTHONY VICARETTI,

                Defendant.

17-cv-8621 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Carl Johnson, proceeding *pro se*, commenced this action on November 7, 2017 against Defendants Joseph Tudisco, Matthew Dicembri, and Anthony Vicaretti in their official and individual capacities, alleging violations of 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") and New York law. Presently before this Court is a motion to dismiss Plaintiff's second amended complaint ("SAC"), (ECF No. 47), pursuant to the Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted, (ECF Nos. 60 & 64). For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are derived from the SAC and the documents incorporated by reference or appended thereto and are assumed to be true for the purposes of this motion.

On June 15, 2017, Plaintiff was arrested by Defendant Tudisco for his alleged role in a domestic violence incident in the Village of Chester.[1] (SAC at 16, 24–28.) Based on a series of

---

[1] Plaintiff states in his opposition that he was arrested "in response to a [sic] anonymous 911 call for domestic violence." (Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") (ECF No. 57) at 7.)

1

misdemeanor complaints submitted by Plaintiff, Plaintiff allegedly attempted to hit his daughter with a belt, and violently threw his mother to the ground when she attempted to intervene. (*Id.* at 24–28.) He is also alleged to have spit in Defendant Tudisco's face when he was brought into the Village of Chester Police Station. (*Id.* at 28.)

On the same date, Plaintiff appeared before a judge, presumably for his arraignment. (*Id.* at 9–11 & 16–17.) In allegedly perjured testimony, Defendants Tudisco and Dicembri stated that Plaintiff acted aggressively towards the judge and resisted Tudisco's attempts to escort Plaintiff out of the courtroom. (*Id.* at 33 & 36.) Tudisco and Dicembri also stated that Plaintiff pushed into Tudisco and the two fell down, and that Plaintiff ended up on top of Tudisco and was kicking him. (*Id.* at 10, 17, 33, & 36–37.) Plaintiff states that he suffered abrasions to his wrist and a scar on his forehead as a result of this incident. (*Id.* at 5 & 17.) Aside from characterizing Defendants' testimony as false, he provides no alternative account of events.

After the arrest on June 15, 2017, and the court appearance described above, it appears that Plaintiff was charged with five misdemeanors arising from his initial arrest, which were dismissed. (*Id.* at 11–12.) Plaintiff was then indicted for assaulting a police officer and for harassment based on the incident in the courtroom. (*Id.*) Plaintiff does not describe the status of these charges, although he suggests that they have been dismissed based on their absence in a criminal history printout he annexes to his opposition papers. However, the date stamp on that printout is June 20, 2017, which predates an arrest warrant issued for the assault charge and a contempt charge that is not referenced in the indictment, and appears to have been dropped, as well as an indictment related to the assault and harassment charges, each of which is annexed to the SAC. (*Id.* at 32, 51.) The most recent date Plaintiff was in court, according to the SAC, was

July 13, 2017. (*Id.* at 11.) However, remand forms submitted by Plaintiff indicate that Plaintiff appeared in the Orange County Criminal Court numerous times between September 12, 2017, and May 2, 2018.[2] (*Id.* at 40–50.)

Plaintiff states that between July 13, 2017, and September 18, 2017, prosecutors "continually tried coercing statement(s)" from his daughter and his mother. (*Id.* at 12.) Both were subpoenaed and were purportedly paid after speaking to the Assistant District Attorney. (*Id.*) Plaintiff received a criminal indictment in the mail from his Legal Aid attorney shortly thereafter. (*Id.*)

Plaintiff includes pages of alleged civil and criminal causes of action in his SAC, ranging from barratry to treason. Most of these causes of action are improperly pleaded, unsupported by a single factual allegation, or do not state a known legal claim. Under a liberal interpretation of Plaintiff's SAC, Plaintiff's assertions amount to claims that Defendants' actions violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.[3] Specifically, Plaintiff pleads claims sounding in false arrest, malicious prosecution, deprivation of due process, and deprivation of his Sixth Amendment rights to notice and a fair trial.[4]

---

[2] Defendants submit publicly available appearance records showing that Plaintiff had an appearance scheduled in Orange County Criminal Court as recently as April 22, 2019, in relation to charges that arose on June 15, 2017. (Reply Affirmation of Anthony V. Merrill ("Merrill Aff.") (ECF No. 68) Ex. F.) The same records indicate the Plaintiff has appeared in relation to these charges approximately twenty times since September of 2017. (*Id.*)

[3] Plaintiff also states that he suffered "denial of due process" pursuant to the First Amendment, (SAC at 4), which protects the freedoms of worship, speech, assembly, and the press. U.S. Const. amend. I. Since there are no facts in the SAC pertaining to Plaintiff's First Amendment rights, the Court presumes Plaintiff's reference to the First Amendment is erroneous. In any event, it is patently clear that Plaintiff does not plausibly state a claim for any First Amendment violation.

[4] While Plaintiff alludes to sustaining abrasions on his wrists during the court proceeding in which he requested to speak, there are not sufficient facts in Plaintiff's SAC from which to infer excessive force.

## II. Procedural Background

Plaintiff commenced this action by filing his Complaint on November 7, 2017. (ECF No. 1.) He was granted leave to proceed *in forma pauperis* on January 29, 2018. (ECF No. 5.) Following service of the Complaint, Defendants sought leave to file a motion dismissing the Complaint, and the Court granted such leave. (ECF No. 17.) Plaintiff filed opposition to the motion and an amended complaint ("Amended Complaint"), without leave of the Court, on May 21, 2018. (ECF No. 20.) Defendants' first motion to dismiss was fully submitted as of July 18, 2018. By Opinion and Order dated December 12, 2018, the Court granted Defendants' motion in its entirety, dismissed the Amended Complaint, which the Court treated as the operative complaint, and granted Plaintiff leave to replead. (ECF No. 42.) Plaintiff filed the SAC on December 18, 2018. (ECF No. 47.) The instant motion ensued.

## LEGAL STANDARDS

### I. Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Askew v. Lindsey*, No. 15 CV 7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

**II.** 42 U.S.C. § 1983 Claims

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color

of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 CV 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

## DISCUSSION

### I. Federal Claims

Defendants argue that Plaintiff failed to state federal claims against them in the SAC because (1) Plaintiff did not connect his § 1983 claim to a violation of any federal right, (2) his claims are barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), and (3) Plaintiff otherwise fails to plead facts amounting to a violation of any federal right.

#### A. *Failure to plead specific violation of a federal right*

Defendants are correct that Plaintiff does not make a concise statement that his Section 1983 claims are for violations of specific federal law provisions. However, it is clear from the context of his SAC that he seeks to allege violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights.[5] (SAC at 4.) Construing Plaintiff's SAC liberally, Plaintiff properly brought a Section 1983 action based on alleged violations of his rights under those specific amendments to the United States Constitution.

#### B. *Federal claims barred under* Heck

In *Heck*, the Supreme Court held that in order to recover damages under Section 1983 for an alleged unconstitutional conviction or imprisonment, "or for other harm caused by

---

[5] While the Amended Complaint also included allegations that Plaintiff's Eighth Amendment rights were violated, Plaintiff has elected not to include such allegations in the SAC. This appears to have been a conscious decision of Plaintiffs, who states in his opposition papers, "[L]et it be drawn attention to that the current complaint … does not mention the 8th Amendment …" (Pl.'s Opp. at 10.) Even if Plaintiff had reasserted his Eight Amendment claims, the SAC presents no new information that would alter the Court's prior finding that Plaintiff failed to allege deliberate indifference to his medical needs sufficient to state a claim for which relief could be granted.

actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must prove that the conviction was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. 477, 486 – 87 (1994). "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 490. As the Supreme Court reiterated in *Wallace v. Kato*, 549 U.S. 384 (2007), *Heck* delays the accrual of a cause of action until the setting aside "*of an extant conviction* which success in that [] action would impugn." 549 U.S. at 393 (emphasis in original).

As this Court observed in its decision disposing of Defendants' first motion to dismiss, (ECF No. 42), Plaintiff does not plead that he was convicted of any of the crimes he was charged with in connection with his arrest and court appearance on June 15, 2017. Instead, he avers that all of the charges against him were dismissed or abandoned. Because there is no underlying conviction or sentence to be invalidated, *Heck* does not apply. *See Wiggins v. Metro. Gov't of Nashville*, No. 16 CV 5519, 2017 WL 4863166, at *3 (6th Cir. May 8, 2017); *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) ("[A] section 1983 action for damages must be dismissed unless there was no conviction or sentence or 'the plaintiff can demonstrate that [a] conviction or sentence has already been invalidated.'" (citation omitted)); *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013); *Turner v. Broward Sheriff's Office*, 542 F. App'x 764, 756 (11th Cir. 2013); *Butler v. Compton*, 482 F.3d 1277, 1280–81 (10th Cir. 2007); *Miller v. Riser*, 84 F. App'x 417, 419 (5th Cir. 2003).

C.     False Arrest

"[T]he warrantless arrest of a person is a species of seizure required by the [Fourth] Amendment to be reasonable." *Payton v. New York,* 445 U.S. 573, 585 (1980). The Fourth Amendment permits warrantless arrests when "the arresting officer has probable cause to believe a crime has been or is being committed." *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008). In assessing a warrantless arrest, the Court considers "totality of the circumstances, from the perspective of a reasonable police officer in light of his training and experience, based on the facts known to the arresting officer at the time of the arrest." *Burgess v. DeJoseph*, 725 F. App'x 36, 39 (2d Cir. 2018) (internal citations and quotation marks omitted). Probable cause to arrest exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that would be sufficient to warrant a person of reasonable caution to believe that the individual being arrested committed a crime. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

The SAC does not state a plausible claim for false arrest in violation of the Fourth Amendment. Plaintiff does not allege that Defendants did not have a warrant or otherwise have probable cause to arrest Plaintiff. To be sure, Plaintiff annexes criminal complaints detailing the allegations that led to his initial arrest on June 15, 2017, one of which is based on the personal knowledge of Defendant Tudisco. (SAC at 24–28.) Plaintiff also annexes an arrest warrant authorizing his arrest for assault and criminal contempt. (*Id.* at 32.) While the Court does not accept these attachments for the truth of the matters they assert, their inclusion in the SAC indicates that Plaintiff is aware of the allegations against him around the time of his arrest, but nonetheless has decided not to challenge or shed light on any aspect of the circumstances surrounding his arrest. This is particularly noteworthy given that the Court highlighted this

omission in its first opinion dismissing the Amended Complaint, which contained "almost no facts surrounding [Plaintiff's] arrest." (ECF No. 42.) Indeed, the SAC provides even fewer facts surrounding Plaintiff's arrest than the Amended Complaint, stating only that the arrest was connected with five misdemeanor charges. (SAC at 9–10.) In his opposition to Defendants' motion, Plaintiff adds only that he was arrested "in response to a [sic] anonymous 911 call for domestic violence." (Pl.'s Opp. at 7.)

Plaintiff's brief recital of vague circumstances surrounding his arrest, without even an allegation that Defendants did not have probable cause, is insufficient for the Court to infer that there was no probable cause for the arrest, even under a liberal interpretation of Plaintiff's pleadings. Although the Court must, and does, afford some latitude to *pro se* plaintiffs, those plaintiffs are still required to comply with the Federal Rules of Civil Procedure, and the Court must dismiss a *pro se* plaintiff's claim if it is not plausible on its face. Because Plaintiff only supports his false arrest claim with conclusory allegations, that claim is not plausible on its face and is dismissed.

D.     *Malicious Prosecution*

The Fourth Amendment right to be free from unreasonable seizures also covers claims sounding in malicious prosecution. *See Albright v. Oliver*, 510 U.S. 266, 271–74 (1994). A malicious prosecution claim pursuant to § 1983 is largely indistinguishable from a state law claim. In New York, a claim for malicious prosecution lies if plaintiff demonstrates four elements: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding was terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) defendant acted maliciously. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).

The SAC does not state a facially plausible malicious prosecution claim. Plaintiff states that Defendants initiated a criminal proceeding against him. He takes issue with the dismissal of the five misdemeanor charges against him which formed the basis of his initial arrest, and the introduction of new charges against him after the incident at his arraignment. Specifically, Plaintiff states that the issuance of an indictment charging Plaintiff with second-degree assault and second-degree harassment because it "changed the prosecution theory and charges without notice, motion, or due process." (SAC at 12–13.) There is no legal support for Plaintiff's suggestion that he was entitled to some unspecified, additional form of process before being formally charged with new offenses. Moreover, Plaintiff has not provided any detail as to what happened to those charges after his indictment. If they, along with the initial misdemeanor charges, were dismissed, it is unclear whether their dismissal was in Plaintiff's favor. Criminal proceedings are terminated in favor of the accused "only when their final disposition is such as to indicate the accused is not guilty." *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980). If the charges were dismissed in the interests of justice, for example, the Second Circuit has determined that such a dismissal is not a favorable termination for the purposes of a malicious prosecution claim. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

Plaintiff's allegations surrounding the dismissal of the criminal charges against him are conclusory and are insufficient to plausibly show that the any criminal proceeding terminated in Plaintiff's favor.[6] Thus, Plaintiff's malicious prosecution claim must be dismissed due to Plaintiff's failure to plausibly allege each element required for a claim upon which relief may be granted.

---

[6] Plaintiff alleges in a conclusory manner, without factual support, that Defendants engaged in a policy of investigating and detaining individuals for discriminatory reasons. (*See, e.g.*, SAC at 6.) To the extent that this threadbare allegation was intended as part of Plaintiff's malicious prosecution claim against Defendants, that claim would fail for the reasons expressed in this Opinion.

E. *Due process claims*

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[7] U.S. Const. amend. XIV. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Additionally, to establish a violation of substantive due process, a plaintiff must allege government action so egregious or outrageous that it can be said to shock the conscience. *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Where probable cause exists, "there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cty. Of Nassau*, 581 F. Supp. 2d 351, 357 (E.D.N.Y. 2008).

Plaintiff alleges that Defendants violated his procedural due process rights because, *inter alia*, the criminal complaints against him and the indictment that issued on September 11, 2017, "fail[ed] to list the jurisdiction of the court," were unverified, included "no probable cause statement," and failed to inform him "of the nature and cause of action." (SAC at 4.) Plaintiff further suggests that his due process rights were violated when the misdemeanor charges initially brought against him were dismissed, and he was indicted on charges arising from the courtroom incident. (SAC at 11–12.) Finally, Plaintiff suggests that his due process rights were violated when Defendant Tudisco removed him from the courtroom without any order from the judge. (SAC at 19.)

The criminal complaints submitted by Plaintiff are each signed and annexed to sworn testimony provided either by Defendant Tudisco, the arresting officer, or in the case of the

---

[7] The Fifth Amendment contains an identical due process clause. U.S. Const. amend. V. While the Fifth Amendment only applies to the federal government, the Fourteenth Amendment explicitly applies this due process requirement to the states as well and covers state actors such as Defendants.

11

courtroom charges, by both Defendant Tudisco and Defendant Dicembri.  There is nothing facially deficient about them.  They also each list the court in which they were filed, which is located in the county where Plaintiff's alleged misdeeds took place.  It is unclear what jurisdictional challenge Plaintiff seeks to bring with regard to these documents.  Moreover, to the extent that Plaintiff complains he was not properly apprised of the charges ultimately brought against him, his assertion is belied by his admission of receipt of the indictment charging him with assault and harassment upon its issuance in September of 2017.  (SAC at 12.)

Most significantly, the SAC fails to assert a plausible claim that any of Defendants' alleged actions or omissions deprived him of any protected interest.  Plaintiff does not allege that he was not given a hearing or that he was otherwise wrongfully incarcerated after the hearing on June 15, 2017.  Plaintiff only claims that he was removed from the courtroom before he was finished speaking without an order from the judge, that the charging documents did not contain sufficient information, and that the charges against him were dismissed; he provides no further detail from which the Court could reasonably infer that he was deprived of a protected interest without due process.  From the allegations in the SAC, the Court cannot even determine when or whether Plaintiff was imprisoned in connection with the charges.  The conclusory allegations in the SAC are insufficient to support a facially plausible due process claim.

F.      *Sixth Amendment*

The Sixth Amendment guards against unjustified deprivations of liberty by requiring the federal government to provide specific procedural protections to all those accused of committing a crime. Specifically, the Sixth Amendment protects the accused's right to a speedy trial, the right to a public trial, the right to a trial before an impartial jury drawn in a prescribed manner, the right to notice, the right of confrontation, the right to compulsory process, and the right to

assistance of counsel. U.S. Const. amend. VI. The Supreme Court has held that, for the most part, the Fourteenth Amendment's Due Process Clause guarantees defendants in state courts the same fundamental procedural protections guaranteed to defendants in federal court under the Sixth Amendment. *See Duncan v. Louisiana*, 391 U.S. 145 (1968) (jury trial); *Washington v. Texas*, 388 U.S. 14 (1967) (compulsory process); *Klopfer v. North Carolina*, 386 U.S. 213 (1967) (speedy trial); *Pointer v. Texas*, 380 U.S. 400 (1965) (confrontation); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (counsel); *see also Herring v. New York*, 422 U.S. 853, 857 n.7 (1975) (citing to prior cases as having incorporated the rights to public trial and notice) (citations omitted).

Plaintiff states that his Sixth Amendment rights were violated because he was not "informed of the nature and cause of the prosecution, which includes the jurisdiction of the court." (SAC at 4.) In essence, Plaintiff suggests that he was not provided adequate notice of the charges against him. Plaintiff admits that he received a copy of the September 2017 indictment charging him with one count of assault in the second degree pursuant to New York State Penal Law Section 120.05, Sudivision 3, and two counts of harassment in the second degree pursuant to New York State Penal Law Section 240.26, Subdivision 1.

An "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he [or she] must defend, and, second, enables him [or her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation omitted); *see People v. Iannone*, 384 N.E.2d 656, 662–663 (N.Y. 1978) (indictment is constitutionally sufficient if it contains a factual statement describing what the defendant did to meet the elements of the offense charged) (citations omitted). This is ultimately a low bar. Indeed, the indictment need only "set forth the offense in the words of the statute itself, as long as those

words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (citations and quotations omitted); *see Iannone*, 384 N.E.2d 656 at 662–663.

The indictment attached to Plaintiff's SAC sets forth Plaintiff's alleged offenses in constitutionally adequate detail, describing the statutory elements of each offense, the persons involved in the offense, and Plaintiff's commission of each element of the offense. (*See* SAC at 51–52.)

Plaintiff also claims that he was deprived of the right to a fair trial based on Defendants' alleged misrepresentations. (SAC at 5–6.) The Second Circuit has held that an officer's fabrication of his or her own observations of alleged criminal activity, which the officer then conveys to a prosecutor, violates the accused's constitutional right to a fair trial. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 997). However, one of the elements of a right-to-fair-trial claim brought under Section 1983 is that as a result of such fabrication, the plaintiff suffered a deprivation of liberty. *See Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)). Here, Plaintiff's conclusory statement that Defendants' sworn testimony describing the events of June 15, 2017, was perjured, without more, does not suffice to state a claim for denial of Plaintiff's right to a fair trial. Although Plaintiff has had multiple opportunities to do so, Plaintiff offers no alternative account of what actually happened in the courtroom, nor does he point to any specific part of Defendants' testimony that he says was falsified. Most significantly, Plaintiff does not allege that he was deprived of liberty as a result of the alleged perjury.

Accordingly, Plaintiff's Sixth Amendment claim is not plausibly alleged and is dismissed.

## II. State Law Claims

Defendants aver, as they did in their first motion to dismiss, that Plaintiff's state law claims against Defendants in their official capacities must be dismissed because he has failed to plead compliance with the New York General Municipal Law § 50. This Court agrees.

State law claims brought in federal court are subject to state procedural rules, which here are those of New York. *Felder v. Casey*, 487 U.S. 131, 152 (1988) ("[F]ederal courts are constitutionally obligated to apply state law to state claims."). Under New York law, a notice of claim is a condition precedent to bringing a personal injury action against a municipal corporation, or any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§50-e(1), 50-i(1); *see Parise v. N.Y.C. Dep't of Sanitation*, 306 Fed. App'x 695, 697 (2d Cir. 2009); *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Section 50-e of the New York General Municipal Law ("Section 50-e") requires that a plaintiff file such a notice of claim within ninety days of the incident giving rise to the claim. N.Y. Gen. Mun. Law § 50-e. To state a claim upon which relief can be granted, a plaintiff's complaint must allege (1) the notice of claim was served; (2) at least thirty days have passed since the notice of claim was filed and before the complaint was filed; and (3) the defendant has not adjusted or satisfied the claim in that time. *See Roundtree v. Cty. of Nassau*, No. 1:15 CV 6582, 2018 WL 443751, at *6 (S.D.N.Y. Jan. 16, 2018); *Canzoneri v. Village of Rockville Centre*, 986 F. Supp. 2d 195, 206 (E.D.N.Y. 2013). "Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction." *Tulino v. City of N.Y.*, No. 15 CV 7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (internal quotation marks omitted); *see Hardy*, 164 F.3d at 793–94 ("Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.")

Pursuant to General Municipal Law § 50-e(3)(a), a notice of claim must be served personally or by registered or certified mail. *See also* N.Y. Gen. Mun. Law § 50-e(3)(b) ("Service by registered or certified mail shall be complete upon deposit of the notice of claim, enclosed in a postpaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the United States post office department within the state."). If a notice of claim is served within ninety days after the claim arises, but not in a manner in compliance with General Municipal Law § 50-e(3)(a), the party against whom the claim is made may return the notice within thirty days after its receipt, specifying the defect in the manner of service.[8] *See id.* at § 50-e(3)(c). If such party does return the notice of claim, the claimant may serve new notice in a manner complying with General Municipal Law § 50-e(3)(a) within ten days after the returned notice is received, and the new notice returned within that period shall be deemed timely served. *Id.* at § 50-e(3)(d). Service by ordinary mail does not satisfy the requirements of Section 50-e. *See Jones v. City of New York*, 751 N.Y.S.2d 522, 523 (N.Y. App. Div. 2002).

The SAC, like the Amended Complaint, contains no facts to suggest that Plaintiff completed a notice of his state law claims as required by the statute. However, shortly after filing the SAC, Plaintiff separately filed a letter including a notice of claim naming Defendant Tudisco and other nonparties as respondents, which he attempted to serve on or about June 26, 2017. (Plaintiff's December 19, 2018 Letter ("Pl.'s 12-19-18 Letter") (ECF No. 48).) Plaintiff also included a "Notice of Rejection of Claim" he received from the Assistant County Attorney

---

[8] Failure to object to the manner of service within 30 days after actual receipt of notice may be deemed waiver of objection to any purported defect in service. N.Y. Gen. Mun. Law § 50-e(3)(c); *see Gruber v. Erie Cty. Water Auth.*, 896 N.Y.S.2d 786, 787 (N.Y. App. Div. 2010). Moreover, defective service will be deemed effective provided that (1) it is timely made and (2) such party against whom the claim is made "demands that the claimant or any other person interested in the claim be examined in regard to it …" N.Y. Gen. Mun. Law § 50-e(3)(c).

for Orange County, stating that his notice of claim was rejected as improperly served. (*Id.*) In light of Plaintiff's *pro se* status, the Court considers this submission as incorporated into the SAC and considers it in deciding the instant motion.

Plaintiff admits that he served his notice of claim by regular first-class mail, rather than registered or certified mail, on or about June 26, 2017. (Pl.'s 12-19-18 Letter.) Defendants returned the notice with a "Notice of Rejection of Claim" specifying the defect in service on or about July 18, 2017. (*Id.*) Plaintiff does not assert that he ever attempted to cure that defect by serving notice via registered or certified mail, but suggests that he could not do so because he was indigent and could not pay for postage. (*Id.*) Plaintiff, who was incarcerated at the time he attempted to serve his notice of claim, further avers that the jail where he was being held did not permit him to make "Poor Person filing[s]." (*Id.*)

Prisoners have "a constitutional right of access to the courts," *Smith v. City of N.Y.*, No. 14 CV 443, 2015 WL 1433321, at *3 (S.D.N.Y. Mar. 30, 2015), which includes "a reasonably adequate amount of postage" for access to the courts, *Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir. 1985) (citation omitted) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). *See Pollack v. Holanchock*, No. 10 CV 2402, 2012 WL 1646893, at *4 (S.D.N.Y. May 10, 2012) ("With regard to legal supplies, '[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents ... and with stamps to mail them.'" (quoting *Bounds*, 430 U.S. at 824–25)).

It is not apparent from Plaintiff's filings whether Plaintiff ever attempted to send his notice of claim by certified or registered mail, or whether he asked jail officials for postage to make such a mailing and saw his requests denied. If Plaintiff was deprived of the opportunity to mail his notice of claim properly and timely, he may have a separate access-to-courts claim

against the individuals who denied his requests for postage. *See Bradshaw v. City of New York*, No. 15 CV 9031, 2017 WL 325260, at *3–*5 (S.D.N.Y. Jan. 23, 2017).

However, even if Plaintiff had alleged all of the foregoing, Plaintiff's service of the notice of claim on Defendant Tudisco in this action by ordinary mail remains inadequate. Although the Court must construe the *pro se* Plaintiff's SAC liberally, the Court cannot exempt Plaintiff from notice of claim requirements under New York law. *See Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013); *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) ("Pro se status, however, 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))). Moreover, the Court does not have jurisdiction to allow Plaintiff to file a late notice of claim. *Corcoran v. N.Y. Power Auth.*, No. 95 CV 5357, 1997 WL 603739, at *6 (S.D.N.Y. Sept. 29, 1997); *see also* N.Y. Gen. Mun. Law § 50(e)(7) ("All applications under this section shall be made to the supreme court or to the county court.") Accordingly, Plaintiff's state law claims must be dismissed for failure to state a claim upon which relief may be granted.

Even assuming, *arguendo*, that Plaintiff had alleged proper service of a notice of claim, the Court would, in its discretion, "decline to exercise supplemental jurisdiction over [Plaintiff's] state law claims [because] it has dismissed all claims over which it has original jurisdiction." *Kolari v. New York Presbyterian Hospital*, 455 F.3d 118, 121–22 (2d Cir. 2006) (quoting 28 U.S.C § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial ... the state claims should be dismissed as well."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when

the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

> III. Leave to Amend

Although *pro se* plaintiffs are generally given leave to amend a deficient complaint, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999), a district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, *see In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008), leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim, *see Valle v. Police Dep't Cnty. of Suffolk Cent. Records*, No. 10–CV–2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010). The Court finds that to be the case here. Plaintiff has not addressed any of the substantive deficiencies pointed out by the Court in its first opinion granting Defendants' motion for dismissal of the Amended Complaint. Nor has Plaintiff indicated that he is in possession of facts that could cure the deficiencies identified in the instant opinion. Further, the Court notes that Plaintiff has already had two opportunities to amend his Complaint. Because it appears to the Court that amendment would be futile, the Court declines to *sua sponte* grant leave to amend again. *See Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (denial of leave to amend affirmed where *pro se* plaintiff had already had opportunity to amend once and made no specific showing as to how he would remedy defects in complaint); *cf. Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45–46 (2d Cir. 2008) (district court did not exceed its discretion in not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile).

19

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Second Amended Complaint is GRANTED in its entirety without leave to replead. The Court respectfully directs the Clerk of the Court to mail a copy of this opinion to Plaintiff at Plaintiff's address on the docket and to show proof of service on the docket. The Clerk of the Court is also respectfully requested to terminate the motions at ECF Nos. 60 and 64, and close the case.

Dated:  January 21, 2020  
         White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge